IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**JAMAR ALLEN**                                                                     **PETITIONER**

**V.**                                                                     **NO. 1:22-CV-92-DMB-RP**

**MARCUS MCCLURE**                                                                     **RESPONDENT**

## MEMORANDUM OPINION

Jamar Allen seeks a writ of habeas corpus under 28 U.S.C. § 2254. Because Allen's grounds for habeas relief are without merit, his petition for a writ of habeas corpus will be denied.

## I
## Procedural History

On July 31, 2019, a jury in the Circuit Court of Alcorn County convicted Jamar Allen of two counts of aggravated assault (Counts I and II), one count of shooting into a dwelling (Count III), and one count of felon in possession of a firearm (Count IV). Doc. #8-1 at PageID 162–65; Doc. #8-6 at PageID 771–74. The trial court sentenced Allen to consecutive terms of twenty years each on the aggravated assault convictions; ten years on the shooting into a dwelling conviction, to run consecutive to the sentences for aggravated assault, with ten years suspended and post-release supervision of five years; and ten years on the felon in possession conviction, to run consecutive to the other sentences, with ten years suspended, for a total of forty years to serve in the custody of the Mississippi Department of Corrections. Doc. #8-1 at PageID 199–202; Doc. #8-6 at PageID 781–82.

On appeal, Allen, through counsel, filed a brief raising two issues for review: (1) whether his trial was rendered unfair by the State's inflammatory closing argument, and (2) whether his trial counsel was ineffective for failing to request a circumstantial evidence jury instruction. Doc.

#8-10 at PageID 1046. The Mississippi Court of Appeals affirmed Allen's convictions and sentences. *Allen v. State*, 325 So. 3d 681, 687 (Miss. Ct. App. 2021), *reh'g denied*, 2021 Miss. App. LEXIS 219, No. 2019-KA-01436 (Miss. Ct. App. May 18, 2021).

On July 1, 2021, the Mississippi Supreme Court initially dismissed Allen's certiorari petition as untimely. *Allen v. State,* 321 So. 3d 565 (Miss. 2021). But on October 7, 2021, based on Allen's motion for reconsideration, the Mississippi Supreme Court deemed Allen's certiorari petition timely filed and denied certiorari review. *Allen v. State,* 326 So. 3d 468 (Miss. 2021). On January 10, 2022, the United States Supreme Court denied Allen's petition for certiorari review. *Allen v. Mississippi*, 142 S. Ct. 835 (2022).

On December 6, 2021, Allen filed in the Mississippi Supreme Court a pro se "Motion for Post-Conviction Collateral Relief" in which he raised two grounds:

(a) Whether [he] was denied the right to an impartial jury of the county where the offense was committed and to due process when the jury was not instructed that proof of venue is an element of the crime in violation of the United States Constitution 6th and 14th Amendment and the Mississippi Constitution Article 3, Section 14, 26.

(b) Whether [he] was denied the right to effective assistance of counsel when counsel failed during trial and on direct appeal to raise a claim that the jury was never required to find the venue element of the crime in violation of the U.S. Constitution 6th and 14th Amendment and the Mississippi Constitution Article 3.

Doc. #8-11 at PageID 1076, 1081, 1085 (grammatical errors in original). On February 28, 2022, the Mississippi Supreme Court denied Allen's motion for post-conviction relief. Doc. #7-3.

On July 6, 2022, Allen filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the United States District Court for the Northern District of Mississippi. Doc. #1. The State of Mississippi responded to the petition on September 15, 2022. Doc.#7. Allen filed a traverse in support of the petition on October 5, 2022. Doc. #9.

## II
## 28 U.S.C. § 2254

The Antiterrorism and Effective Death Penalty Act bars claims from habeas corpus review unless they meet one of its two exceptions:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2). The first exception applies to questions of law. *Morris v. Cain*, 186 F.3d 581, 584 (5th Cir. 2000). The second exception applies to questions of fact. *Id.*

A state court's decision is contrary to federal law if the state court applies a rule that contradicts governing law established in Supreme Court cases, or confronts a set of facts materially indistinguishable from a decision of the Supreme Court and arrives at a different result. *Reeder v. Vannoy*, 978 F.3d 272, 276 (5th Cir. 2020) (quoting *Jenkins v. Hall*, 910 F.3d 828, 832 (5th Cir. 2018), *cert. denied*, 140 S. Ct. 65 (2019)). A state court unreasonably applies Supreme Court precedent when it identifies the correct governing legal rule but unreasonably applies it to the facts of the prisoner's case. *Id.* The state court's findings of fact are presumed correct unless overcome by clear and convincing evidence. *Id.*

## III
## Factual Background

The Mississippi Court of Appeals summarized the pertinent facts:

> Allen moved in with his girlfriend, Charity Payne, in late January 2017. On February 12, 2017, Payne ended her relationship with Allen after he became

3

aggressive and threatened to "shoot the place up" if he caught other men around her. That same day, Payne asked her ex-boyfriend Larry Hope to stay at her house because she needed protection from Allen. Allen returned to Payne's house around 8 p.m. to retrieve his clothes. When he arrived, he saw Hope there, and a fight ensued between the two men. The fight ended with Allen and Hope shaking hands and Allen leaving without his clothes.

Around 3 a.m. the next morning, Allen returned to Payne's house and knocked on the door, demanding his clothes. Payne looked out the window and saw Allen. Payne gathered Allen's clothes in a black garbage bag, opened the door, and threw the bag out. She made eye contact with Allen before she closed the door. Hope also saw Allen's face. When Payne closed the door, she heard eight or nine gunshots from outside. Payne was struck in the chest, and Hope was struck in the back.

Hope called 911. When the officers arrived, Payne stated that Allen had shot them.

Notably, neither Payne nor Hope saw Allen with a gun. A private security guard also arrived at the scene after hearing the gunshots. He stated that around 2 a.m. he saw a man standing outside of Payne's house "looking suspicious." Investigators recovered eight spent shell casings from the crime scene but did not find a gun. They also documented the bullet holes in Payne's house.

While Sergeant Ken Walker was inspecting Payne's backyard, he saw a small Nissan or Toyota with its engine running. He watched as the vehicle drove away without its headlights on. As the vehicle braked, Sergeant Walker noticed the driver's side taillight did not work. When Captain Ben Moore arrived, Sergeant Walker told him about the suspicious vehicle. A few weeks before, Captain Moore had pulled over a similar vehicle with a broken taillight. During that traffic stop, Captain Moore arrested the driver, Allen, because there was a warrant out for his arrest in Wisconsin, but then Captain Moore released Allen. [fn omitted].

Captain Moore contacted Detective Jerry Rogers to help locate Allen. Detective Rogers located the vehicle from Captain Moore's traffic stop and issued a "be on the lookout" notice for Allen. Allen was eventually located in custody in Milwaukee, Wisconsin. No weapon was ever recovered.

*Allen*, 325 So. 3d at 683–84.

## IV
## Analysis

Allen's petition asserts four grounds for habeas corpus relief:

**GROUND ONE:** Denial of the Right to a fair Trial.
… Prosecutors closing statement there was no gun because Allen ran off back to Wisconsin with it caused petitioner to be convicted without proof of a gun or that petitioner Allen committed the crimes, thus the jury trial was totally unfair.

4

> …
>
> **GROUND TWO:** Denial of the Right to a fair Trial and Ineffective Assistance of Counsel.
> … Counsel was deficient in not requesting a circumstantial evidence jury instruction petitioner Allen was prejudice by counsel deficiently because it caused petitioner Allen to become convicted without the proof that he committed the crimes since there was no gun, confession, or eye witnesses to the crimes.
>
> …
>
> **GROUND THREE:** Defective Jury Instruction.
> … Jury Instructions listing the elements of the crimes failed to list the venue which is as essential element of the crimes in the state of Mississippi.
>
> …
>
> **GROUND FOUR:** Ineffective Assistance of Counsel.
> … Counsel was deficient for not requesting the venue element, petitioner Allen was prejudice by counsel error, because there was conflicting testimony about where petitioner Allen was and where the crimes occurred.

Doc. #1 at 4–7 (emphases, and spelling and grammatical errors in original).

### A. Prosecutor's Closing Statements

Allen argues he was denied the right to a fair trial because during closing arguments, the prosecutor stated that no gun was recovered because Allen "ran off back to Wisconsin" with it.[1] *Id.* at 4. Allen argues that such statement "caused [him] to be convicted without proof of a gun or that [he] committed the crimes." *Id.* The State submits that "[t]he prosecutor, in closing arguments, is 'not prohibited from reciting to the jury those inferences and conclusions [he] wishes the jury to draw from the evidence so long as those inferences are grounded upon evidence;'" "the prosecutor's statement did just that—requested the jury to 'draw a desired conclusion based on the evidence;'" and "the prosecutor did not make the argument to show that Allen fled, but rather to

---

[1] When the statement was made, Allen's counsel objected and sought a mistrial on the argument that "[t]here's been no evidence [of flight with the weapon] in the trial." Doc. #8-6 at PageID 745–46. The trial court overruled the objection and denied the request for a mistrial. *Id.* at PageID 746. Allen's counsel renewed the motion for mistrial after closing arguments and the trial court again denied the motion. *Id.* at PageID 769.

5

suggest that 'no weapon was recovered because Allen presumably took it with him to Wisconsin.'" Doc. #7 at 16 (quoting *Dowthitt v. Johnson*, 230 F.3d 733, 755 (5th Cir. 2000)). According to the State, even if the prosecutor's statement was improper, "Allen is not entitled to federal habeas relief absent a showing that the prosecutor's remarks were 'so prejudicial that they render[ed] the trial fundamentally unfair,'" *id.* (quoting *Harris v. Cockrell*, 313 F.3d 238, 245 (5th Cir. 2002)) (alteration in original); since "the argument was neither persistent nor pronounced," Allen fails to show that "but for the remarks, no conviction would have occurred," *id.* at 17 (quoting *Felde v. Blackburn*, 795 F.2d 400, 403 (5th Cir. 1986)); and the evidence of Allen's guilt was "overwhelming," *id.* (quoting *Allen*, 325 So. 3d at 685).

Allen replies that the prosecutor's use of his travel to Wisconsin as inculpatory evidence of flight was improper, especially when the prosecutor and the trial court "knew that [he] had a legitimate reason to have traveled to Wisconsin"–"to resolve an outstanding warrant;" such "invited the jury with the trial courts acquiescence, to conclude and to put in the mind of the jury that [he] left Mississippi to avoid prosecution;" there is "no doubt the comment made by the prosecutor to the jury was so inflammatory that it did so create undue prejudice to [him] resulting in the jury decision influenced by such prejudice" because the natural and probable effect of the prosecutor's closing statement was "the jury will have in their mind to conclude that [he] run to Wisconsin with the said gun to avoid prosecution … even though he had an independent reason unknown to the jury to traveled there." Doc. #9 at 7, 8 (grammatical errors in original).

In *Darden v. Wainwright*, the United States Supreme Court addressed whether a prosecutor's closing argument was improper, stating the "relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" 477 U.S. 168, 181 (1986). Here, the Mississippi Court of Appeals held:

> At the outset, we acknowledge that the State's comment is not evidence of flight. The prosecutor did not state that Allen traveled to Wisconsin because he was guilty or fled Mississippi because he was guilty. Rather, he suggested that no weapon was recovered because Allen presumably took it with him to Wisconsin.

*Allen*, 325 So. 3d at 685. The Mississippi Court of Appeals elaborated that even if the prosecutor's statement rose to the level of misconduct, the error was harmless given the overwhelming evidence of Allen's guilt. *Id.*

By concluding that the prosecutor's statement was not evidence of flight but an inference of where the gun used in the crime could be, the Mississippi Court of Appeals made no error in fact or law. Allen has not shown otherwise nor does he cite any authority to support the conclusion that the prosecutor's statement was improper.[2] Because all Allen does is assert without evidence or authority that the statement influenced the jury such that the trial was rendered unfair, he fails to show he is entitled to habeas relief based on Ground One.

### B. Ineffective Assistance of Counsel–Circumstantial Evidence Instruction

Allen claims his counsel "was deficient in not requesting a circumstantial evidence jury instruction" which, according to him, caused prejudice because he was "convicted without proof that he committed the crimes since there was no gun, confession, or eye witnesses to the crimes." Doc. #1 at 5.

The State responds that a circumstantial evidence instruction must be requested under Mississippi law, as pointed out by the Mississippi Court of Appeals, and the failure to request one constitutes a waiver; the state court held the choice of whether to request such a jury instruction is

---

[2] The cases Allen cites do not support the statements attributed to them, bear no relevance to prosecutorial misconduct, or are not binding on this Court. *See, e.g.*, Doc. #9 at 8–9 (citing *United States v. Bedgood*, 49 F. 54 (S.D. Ala. July 23, 1891) (defendant's false swearing in taking oath); *Jenkins v. Commonwealth*, 132 Va. 692 (1922) (reversible error for jury instruction regarding defendant's flight from prosecution to raise presumption of guilt); *Rowan v. United States*, 277 F. 777,779 (7th Cir. 1921) ("[A]dmissibility of flight depends on whether it has or lacks probative value in support or denial of an issue, and not on the fact that the other evidence in the case may be direct or circumstantial or mixed.")).

a matter of trial strategy, except when "'the evidence against one's client is wholly circumstantial, then the failure to request such instruction falls below the standard of reasonable professional assistance;'" "Allen has failed to show the requisite deficient performance or prejudice to succeed on his ineffective assistance of counsel" claim and even if Allen's counsel chose wrong in not requesting a circumstantial evidence instruction, "Allen cannot show that but for counsel's actions, the outcome of the trial would have been different." Doc. #7 at 30, 31–32 (citing *Allen*, 325 So. 3d at 686).

In his traverse, Allen argues that his trial counsel was constitutionally deficient for not requesting circumstantial evidence instructions as the evidence against him "was entirely circumstantial in all counts;" "[t]here were no 'ballistic testing' … nor cloths by an 'crime lab expert' … no shell casing lead to [him]," and the "two victims Payne and Hope both had displayed faulty memories;" "[m]oreover, there's one side to the story" as "Investigator Rogers felt it was no need to take [his] statement to even see where he was on the night of the shooting or if he had any involvement in the shooting;" Payne had written Hope's statement for him when Hope spoke to Investigator Rogers, Rogers apparently admitted "he let her write it and stepped out as she was doing so," and "Payne also testified that Allen run on foot" but Sergeant Walker testified that "[he] left in a vehicle, despite not being able to see [him];" and "Hope cannot say he saw [him] with a firearm nor can he say [he] was the one who had shot him that night." Doc. #9 at 10–12 (grammatical errors in original). Based on these arguments, Allen submits, "[Had] trial counsel requested such instruction," he "would not [had] been convicted on all counts." *Id.* at 12 (brackets in original).

Contrary to Allen's arguments, the Mississippi Court of Appeals did not conclude that his attorney provided deficient services; rather, it based its decision on Allen's failure to satisfy the

8

prejudice prong. *Allen*, 325 So. 3d at 686. And even if Allen could establish deficient performance, the Mississippi Court of Appeals held "'there is no doubt that Allen's claim fails because he cannot satisfy, based on the record of his trial, the second *Strickland* prong" and "we can confidently say it would not have changed the result" of his trial, explaining:

> Allen had threatened to "shoot the place up" if he caught Payne with other men. He became violent the first time he returned and tried to get his clothes. Both Payne and Hope saw Allen the second time he returned, right before Payne shut the door. No one else was outside. As soon as Payne shut the door, she and Hope were shot through the door where Allen was standing. Additionally, the suspicious vehicle leaving the crime scene matched the vehicle driven by Allen a few weeks prior.

*Id.* at 686–87.

Even accepting the evidentiary issues Allen raises, Allen has provided no evidence (or argument or authority) demonstrating that if the circumstantial evidence instruction had been requested and given, it would have influenced the jury's verdict such that the jury would have found him not guilty on all counts. Allen has not countered the uncontested testimony of Payne and Hope that he was at Payne's house the day before the shooting and was seen by Payne and Hope seconds before the shooting took place.³ Doc. #11-1 at PageID 1270 (Payne's testimony); Doc. #11-2 at PageID 1287 (Hope's testimony); Doc. #11-6 at PageID 1390–391 (defense closing argument). Simply put, given the strength of the evidence of Allen's guilt, "the record establishes that it was not reasonably likely that the instruction would have made any difference." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010). Allen is not entitled to habeas relief under Ground Two.

### C. Failure of Prosecution to Instruct Jury on Venue Element

Allen contends that the jury instructions listing the elements of his crimes did not name the

---

³ Allen also argues there is "no evidence in the record that shows [he] was in Mississippi on the night of the shooting," relying on his notice of alibi document. Doc. #9 at 4. In that document, Allen represents that his attorney received a notarized statement by Sean Nelson Ali Rogers which states, "Allen was living and selling socks with me on and before the date of February 13, 2013 in the city of Milwaukee, Wisconsin." Doc. #10 at PageID 1174, 1179. The notice also represents that Rogers' address is unknown and despite having Rogers' phone number, Allen's counsel could not reach Rogers. *Id.* at PageID 1174.

9

venue, which he argues is an essential element of such crimes. Doc. #1 at 6.

The State argues that "challenges to jury instructions rarely provide a basis for federal habeas relief" so "improper jury instructions in state criminal trials do not generally form the basis for federal habeas relief;" and such challenges do state a claim of relief when "the error resulted in 'prejudice of constitutional magnitude.'" Doc. #7 at 18–19 (quoting *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002), and *Ramirez v. Dretke*, 398 F.3d 691, 697 (5th Cir. 2005)). While the State notes that an accused has the constitutional right to a trial "in the district in which the crime was committed," *United States v. Winship,* 724 F.2d 1116, 1124 (5th Cir. 1984), and the Mississippi Supreme Court has held that when venue was a question for the jury, venue is "essential" to a criminal prosecution, *Rogers v. State,* 95 So. 3d 623, 632 (Miss. 2012), it nonetheless asserts that the Mississippi Supreme Court "has also held that, where venue is not at issue, the defendant is 'not entitled to a venue instruction unless and until the defendant presented some evidence that venue was not properly in the county charged in the indictment.'" *Id.* at 20 (quoting *Rooks v. State,* 529 So. 3d 546, 556–57 (Miss. 1988)). According to the State, "venue was never disputed" and "both the prosecution and defense consistently acknowledged that the crime occurred on Mitchell Street in Alcorn County, Mississippi, which the evidence established was the dwelling place of the victim;" and Allen's jury was instructed "as a whole" to "make a finding on the venue of the crime," which Mississippi courts have found addresses the element of venue even if instructions for specific counts did not. *Id.* at 21 (citing Doc. #8-4 at PageID 427, 431–32, 559; Doc. #8-5 at PageID 572; Doc. #8-6 at PageID 733, 750; *Prokasky v. State,* 189 So. 3d 703, 706–07 (Miss. Ct. App. 2016)). The State further submits that the Mississippi Court of Appeals' decision is consistent with *Neder v. United States* because *Neder* held "an instruction that omits an element of the offense does not necessarily render a criminal trial fundamentally

10

unfair" and is "subject to harmless error analysis" "so even if it was error to omit venue from the challenged instructions, any error would be harmless because venue was both uncontested and supported by overwhelming evidence."[4] *Id.* at 22–23 (quoting 527 U.S. 1, 8, 15 (1999)).

Allen replies that the "jury instructions [a]tempts but fails to convey with clarity and accuracy the [D]efinition, as meaning of 'reasonable doubt' in [his] jury instructions;'" and "[t]here was conflicting evidence as to whether the crimes occurred in Alcorn County" as "Hope testified he was in walnut" and "Payne testified they met in walnut then went to her house."[5] Doc. #9 at 4, 13 (alterations in original) (quoting *Victor v. Nebraska*, 511 U.S. 1, 38 (1994) (Blackmun, J., dissenting)).

Whether the crimes took place on one street or another in Alcorn County would not raise a venue question since venue lies in the county where the the crime occurred. *Rogers*, 95 So. 3d at 632. While none of the jury instructions for the crimes charged required the jury to find the crimes occurred in Alcorn County, viewing the jury instructions as a whole along with the trial record,[6] venue was clearly established. *Waddington v. Sarausad*, 555 U.S. 179, 190–91 (2009). Allen has not shown a venue instruction was required under the circumstances. Consequently, Allen's Ground Three does not entitle him to habeas relief.

### D. Ineffective Assistance of Counsel: Venue Element in Jury Instructions

Because his counsel did not request a venue element instruction based on the "conflicting testimony about where [he] was and where the crimes occurred," Allen argues he is entitled to

---

[4] In its response, the State also notes that the Mississippi Supreme Court did not find Allen's argument well-taken when Allen raised the issue of a jury instruction regarding venue in his motion for post-conviction relief. Doc. #7 at 8 (citing Doc. #7-3).

[5] "Walnut" refers to the street across from Payne's house. Doc. #8-4 at PageID 444–45.

[6] Allen's trial counsel did not argue venue was at issue in the case. *See, e.g.*, Doc. #8-3 at PageID 416–17 ("There's no doubt, there's no dispute on what happened on the early morning of February 13th, 2017. … What's in dispute is who did the shooting.").

habeas relief. Doc. #1 at 7.

The State reiterates that "when venue is not at issue, the defense is not entitled to a venue instruction." Doc. #7 at 32 (citing *Rooks*, 529 So. 3d at 556–57). It argues that Allen's counsel could not be ineffective since "the elements instructions also tracked the language of the statutes for each of Allen's crimes" and "when the instructions are read as a whole, the jury was instructed on venue, and thus, there was no reversible error." *Id.* (citing *Clark v. State*, No. 2019-DP-00689-SCT, 2022 WL 1497939, at *44 (Miss. May 12, 2022); *Prokasky*, 189 So. 3d at 706–07). Assuming a venue instruction should have been requested by Allen's counsel, the State argues that because it "clearly proved that the crime occurred on Mitchell Street in Alcorn County, Mississippi," "Allen cannot show that but for counsel's actions, the outcome of the trial would have been different here." *Id.* at 33.

In his traverse, Allen replies that his counsel "failed during trial to raise that the jury had to find 'beyond a reasonable doubt that the alleged crimes occurred in Alcorn, County Corinth Mississippi,'" which denied him of rights to ineffective assistance of counsel. Doc. #9 at 14.

As explained above, Allen has not shown venue was at issue and thus has not shown his counsel's performance was deficient due to any venue issue. Even if the jury should have been instructed on venue for each and every charge against him, Allen does not explain why such would have made it reasonably probable that the instructions would have changed the outcome of his trial. Ground Four is without merit too.

## V
## Certificate of Appealability

Rule 11 of the Rules Governing § 2254 Proceedings in the United States District Courts requires a court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability ("COA") will issue "only if the applicant has made

12

a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For cases rejected on their merits, a movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" to warrant a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Because Allen has not shown a circumstantial evidence jury instruction may have influenced the jury in the face of the substantial evidence against him, Grounds One and Two of his petition do not pose debatable constitutional claims. Likewise, Allen failed to show venue was at issue in his case or that the failure to request an instruction on venue influenced the outcome of his trial, Grounds Three and Four are not debatable. A COA should not issue in this case.

## VI
## Conclusion

Allen's petition [1] for a writ of habeas corpus under 28 U.S.C. § 2254 is **DENIED**. A certificate of appealability is **DENIED**. A final judgment will issue.

**SO ORDERED**, this 8th day of April, 2025.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**